## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **NICOLE JOHNSON, individually and on behalf of all other similarly situated individuals,** )<br>)<br>)<br>)<br>**PLAINTIFF,** )<br>)<br>v. )<br>)<br>)<br>**TOTAL LOOK SALON & SPA AND CHER ANDERSON,** )<br>)<br>**DEFENDANTS** )<br>) | **CIVIL NO. 3:18-CV-01630 (RNC)**<br><br><br><br><br><br><br><br><br><br><br>**JANUARY 31, 2019** |

## <u>COLLECTIVE ACTION AND CLASS ACTION – SECOND AMENDED COMPLAINT</u>

Nicole Johnson (hereinafter "Named Plaintiff" or "Johnson") on behalf of herself and those similarly situated (hereinafter referred to as "Plaintiffs"), hereby complain as follows against Defendants:

## I.     INTRODUCTION

1.     Named Plaintiff has initiated this action to redress violations by Defendants of the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et. seq.</u> ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58 <u>et. seq.</u> ("CMWA") and for common law claims for breach of contract and unjust enrichment.  Total Look failed to pay its non-exempt employees for training sessions, training-related assignments and office meetings, in violation of the FLSA and CMWA.  They breached their agreements to pay the Plaintiffs for the work they performed and were unjustly enriched as a result of their failure to pay the Plaintiffs.  The named Plaintiff has also initiated this action to redress violations of the Connecticut Pay Equity and Fairness Statute, Conn. Gen. Stat. § 31-40z.  Total Look Salon & Spa violated and

1

continues to violate the statute by maintaining a written policy that prohibits employees from discussing their wages with other employees.

2. Plaintiffs are entitled to recover (a) unpaid wages for hours worked, (b) unpaid overtime wages, (c) liquidated damages, (d) wages withheld from final paychecks, (e) compensation based on the amount in which the defendants were unjustly enriched, (f) attorney's fees and costs and (g) further relief as this Court finds just and proper.

II.   **JURISDICTION AND VENUE**

3. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 1331.

4. This Court has jurisdiction over Plaintiff's CMWA claims pursuant to 28 U.S.C. Section 1367 since they are so related to the FLSA claims that they form part of the same case or controversy.

5. This Court has pendant jurisdiction under the Plaintiff's Connecticut common law and statutory claims.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because the acts or omissions giving rise to the claims in this Complaint took place in this district.

III.   **PARTIES**

7. Plaintiff, Johnson is an individual residing in Monroe, Connecticut.  At all times relevant to this Complaint, Johnson was an "employee" of Total Look, as that term is defined in the FLSA, CMWA and the Connecticut Pay Equity and Fairness Statute.

8. Total Look Salon and Spa ("Total Look") is a Connecticut corporation with a

2

principal place of business located at 3482 Post Road, Southport, Connecticut, 06890.  Total Look is also known as The Total Look of Southport, Inc. and Aesthetic Treatment Centers, Inc.  At all times relevant to this Complaint, Total Look was the "employer" of Johnson and all other similarly situated individuals, as that term is defined in the FLSA, CMWA and the Connecticut Pay Equity and Fairness Statute.

9. Defendant, Cher Anderson, is the Chief Executive Officer and President of Total Look.

10. At all time relevant to this Complaint, Cher Anderson was the individual within Total Look with the ultimate and exclusive authority to set the hours of employment, to direct the work and to pay the wages of Johnson and all other similarly situated individuals, and Cher Anderson's exercise of that authority was the direct cause of Total Look's failure to pay wages as set forth below.  Accordingly, Cher Anderson was the "employer" of Johnson and all other similarly situated individuals, as that term is defined in the FLSA and CMWA.

## IV.     COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A.     The FLSA Class

11. Johnson brings this action on behalf of herself and all other similarly situated employees, present and former, who were and/or are affected by the actions, policies and procedures of Defendants as described herein.

12. In addition, and in the alternative, Johnson brings this action in her individual and personal capacity, separate and apart from the class claims set forth herein.

13. The FLSA class is defined as follows:

- All current and former non-exempt employees of Defendants,

3

including Stylists, Assistant Stylists, Senior Stylists and Master Stylists, who were employed at any time after September 27, 2012 through the date of final judgment and who were not paid for their time spent in training sessions, training assignments, staff meetings and/or placing Facebook posting about Total Look on their private Facebook accounts.

14.   Johnson reserves the right to amend said class definition consistent with information obtained through discovery.

15.   Johnson sues on behalf of herself and those members of the FLSA class who have filed or will file with the court their consents to sue.  This is an appropriate collective or representative action under 29 U.S.C. § 216(b), sometimes referred to as an "opt-in class action," in that Johnson and the members of the putative class are similarly situated.

16.   Defendants have engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Johnson and other similarly situated employees and former employees in accordance with the provisions of the FLSA by failing to pay those employees for their time spent training, completing training assignments and attending staff meetings and by withholding wages from some employees' final paychecks.

**B.     The Connecticut Class**

17.   Johnson also sues on behalf of herself and all other members of the Connecticut class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

18.   The Connecticut class is defined as follows:

- All current and former non-exempt employees of Defendants,

4

including Stylists, Assistant Stylists, Senior Stylists and Master

Sytlists, who were employed at any time after September 27, 2012

through the date of final judgment and who were not paid for their

time spent in training sessions, training assignments, staff meetings

and/or placing Facebook posting about Total Look on their private

Facebook accounts.

- All current and former employees who have been employed by the

   Defendant on or after October 30, 2016 and who were subject to

   the Defendant's written "Salon Policies."

19.   Johnson reserves the right to amend the class definition consistent with

information obtained through discovery.

20.   Class certification for these Connecticut law claims is appropriate under Rule 23(a)

and Rule 23(b)(3) because all the requirements of the Rules are met.

21.   The class is so numerous that joinder of all members is impracticable.

22.   There are questions of law and fact common to the class, including whether the

putative class members participated in training for which there were not paid, for

attending staff meetings for which they were not paid, and/or had wages withheld

from their final paychecks in violation of Connecticut law and whether or not

Defendants' conduct was willful.

23.   Johnson's claims are typical of those of the class members.  Johnson's claims

encompass the challenged practices and course of conduct of Defendants.

Furthermore, Johnson's legal claims are based on the same legal theories as the

claims of the putative class members.  The legal issues as to the violation of the

CMWA by Defendants' conduct apply equally to Johnson and to the class.  The

legal issues as to the violation of Connecticut's Pay Equity and Fairness Act apply equally to Johnson and to the class who were all subject to the Defendants' "Salon Policies."

24. Johnson will fairly and adequately protect the interests of the class. Johnson's claims are not antagonistic to those of the putative class and she has hired counsel skilled in the prosecution of class actions.

25. Common questions of law and fact predominate over questions affective only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system protects the rights of each class member and maximizes recovery to them.

## V.    FACTS

26. On August 19, 2016, Total Look offered Ms. Johnson a position as an Assistant Stylist. The written job offer stated that she would be paid $10.00 per hour and "[t]he Company is committed to ongoing education and funds the costs of courses that improve job performance." The job offer contained a schedule that provided that she would be required to work 40 hours per week with the hours spread out over the five days between Wednesday-Sunday. The schedule stated that she would not work on Mondays.

27. Cher Anderson told Ms. Johnson that she would receive an annual performance review and annual pay increase.

28. Ms. Johnson did not receive either a performance review or pay increase.

29. The only pay increase Ms. Johnson received while employed by the Defendant

was to $10.10 per hour on January 1, 2017 due to the State of Connecticut's

increase in the hourly minimum wage to $10.10.

30.   On August 24, 2016, Ms. Johnson entered into a "Training Agreement" which

provided that Total Look may "provide training to employees through in-house or

outside training programs to enhance employee's professional skills and activities."

The Agreement stated that Total Look would provide approximately 225 hours of

in-house training and 75 hours of outside training during the training period.

31.   The aforesaid Training Agreement provided that the training cost Total Look $25

per hour and if the employee's employment terminated either voluntarily or

involuntarily during the first three years of employment, she would be required to

reimburse Total Look based on the following percentage of training costs.

| Year In Which Employment Terminates | Percentage of Training Costs to be Reimbursed |
|---|---|
| 1st | 75% |
| 2nd | 50% |
| 3rd | 25% |

32.   The Training Agreement provided that Total Look would deduct all training costs

from the employee's last paycheck.  If the employee's last paycheck did not cover

the total training costs owed, the Training Agreement stated that the employee

agreed to pay Total Look the balance in three equal installments, payable on the

first day of the first month in the three months after the employee's employment is

terminated.

33.   The offer letter dated August 19, 2016 sent by Total Look to Ms. Johnson stated

that "you will be included in our Training Program and we will pay you for services

following the successful completion of our training modules."

34.   Ms. Johnson began working at Total Look on September 6, 2016.

35.   Total Look conducted training sessions for employees that were held on Mondays. However, employees were not paid wages for the hours they spent attending training sessions.

36.   Total Look periodically held Staff Meetings on Mondays for all employees. However, employees were not paid for the hours they spent attending Staff Meetings.

37.   During the time period from around 2012 through 2016, Total Look held staff meetings at Chip's Restaurant in Fairfield, CT, periodically on Mondays; employees were not paid to attend those meetings.

38.   Total Look had written policies related to Training Classes and Meetings which stated that:

   • "Any exemptions from classes must be approved by Cher Anderson."

   • "When you complete a time-off request for vacation, etc., please review the entire week to determine if you need to be excused from a class."

39.   On information and belief, Anderson told Total Look employees that, if they did not attend training sessions and/or staff meetings, their employment would be terminated.

40.   On information and belief, if an employee was unable to attend a training session or staff meeting, Anderson required them to complete an alternative assignment, such as writing a research paper on an assigned topic or styling mannequin heads.

41.   On information and belief, Anderson required employees to place advertising for Total Look on their private social media Facebook pages.  However, employees were not compensated for the time they spent placing Facebook postings.

8

42.   Total Look periodically sent out Educational Calendars with schedules.  For

example, it issued an Educational Calendar ("Calendar") for July-December, 2016

which provided for the following dates for training:

Stylist and Assistants – 7/25, 8/1, 8/15, 8/29, 9/12, 9/26, 10/24

Senior Stylists – 9/12, 10/24

Master Stylists – 9/12, 10/24

The Calendar stated that "All classes will be held from 10:00 AM - 4:00 PM unless

otherwise noted on staff Board."

43.   The July-December 2016 Calendar stated that Stylists and Assistants, Senior

Stylists, Master Stylists and Nail Techs needed to attend a Staff Meeting on

11/7/16 from 9:30 AM – 12:30 PM.

44.   Total Look issued a 2017 Educational Calendar for January-June listing the

following training dates:

Stylists and Assistants – 1/16, 1/30, 2/13, 3/13, 3/27, 4/10, 4/24, 5/8, 5/22, 6/5

Senior Stylists – 1/16

Master Stylists – 1/16

The Calendar stated that all classes would be held from 10:00 AM – 4:00 PM

unless otherwise noted on the staff board.

45.   On December 30, 2016, Total Look issued a memo to "All Staff" stating that they

should mark their calendars for the following dates for Staff Meetings in 2017 –

February 27, June 19, October 23.  The Staff Meetings were to be held at the

Salon from 9:30 AM – 12:30 PM.

46.   The June 19, 2017 Staff Meeting ended up being cancelled and replaced by a

training schedule with host Justin James related to men's haircuts.  The memo

about the training session provided that all technical staff were to attend from 9:30 AM – 12:30 PM sessions and that the Assistant Stylists and Stylists were to attend from 12:30 PM – 3:30 PM.  The memo stated that Master Stylists were excused from attending the 12:30 – 3:30 PM session and that the Aesthetics/Nail Department and Housekeeping did not have to attend any of the trainings.

47.  Total Look issued a memorandum dated January 3, 2018 to "All Staff" telling staff to mark their calendars for Staff Meetings to be held on February 26, June 18 and October 22.  The Staff Meetings were scheduled for 9:30 AM – 12:30 PM and would be held at the Salon.

48.  Ms. Johnson worked as an Assistant Stylist until March 24, 2018.

49.  During her 19-month tenure at Total Look, Ms. Johnson attended approximately 30 six-hour training sessions, which translates to 180 hours.  She was not paid for any of those hours.

50.  At the training sessions, the Total Look trainers routinely gave Assistant Stylists three hair cutting assignments to be completed before the next training session was held two weeks later.  Each assignment generally took approximately 1-2 hours to complete.

51.  During the time period between October 1, 2012 through the present when Ms. Johnson joined Total Look, the Stylists, Assistant Stylists, Senior Stylists and Master Stylists employed by Total Look participated in periodic training sessions, completed homework assignments and attended Staff Meetings but were not paid for any of the time they spent on those activities.

52.  The Assistant Hair Stylists were required to complete the assignments on mannequins which they were required to purchase themselves.

53.   During the course of her 19-month tenure with Total Look, Ms. Johnson purchased eight mannequins on which she completed the hair cutting assignments.  The mannequins cost approximately $80 each.

54.   Assistant Stylists' performance on the haircutting assignments was evaluated by Cher Anderson and/or a Senior Stylists based on criteria for each model set forth on a Total Look "Haircutting Evaluation Form."  The evaluation form required that the evaluator check off a box for either "Pass" or "Needs Improvement" and the date the evaluation was completed.

55.   Ms. Johnson spent about 2 hours every week completing the training assignments. However she was not paid for the time she spent completing the assignments.

56.   Johnson and all other Assistant Stylists and Stylists customarily and regularly worked more than 40 hours per week but were not paid overtime compensation at a rate of one-and-one-half time their regular rate of pay for all hours over 40 per week, as required by the CMWA and FLSA.

57.   Under the U.S. Department of Labor Regulations enforcing the FLSA, employers must pay their employees for mandatory training and meetings.  An employer seeking to prove that training or meetings are not mandatory must demonstrate that:

> (a) Attendance is outside of the employees' working hours;
>
> (b) Attendance is actually voluntary,
>
> (c) The course, lecture, training or meeting does not directly relate to the employee's job, and
>
> (d) The employee performed no productive work while attending.

29 C.F.R. § 785.27.

58.  The Department of Labor's ("DOL") regulations provide that "attendance is not voluntary, of course, if it is required by the employer.  It is not voluntary, in fact, if the employee is given to understand or led to believe that his present working conditions or the continuation of his employment would be adversely affected by non-attendance."  29 C.F.R. § 785.28

59.  Total Look employees were required to attend training sessions throughout the time period from September 27, 2012 to the present.

60.  Total Look employees were required to attend staff meetings throughout the time period from September 27, 2012 to the present..

61.  Total Look's employees' employment would be adversely affected if they did not attend training sessions.

62.  Total Look employees' employment would be adversely affected if they did not attend staff meetings.

63.  While discussing employee training at a Connecticut Department of Labor Unemployment Appeal Hearing held on July 12, 2018, Total Look's CEO, Cher Anderson, stated under oath that "if they want to advance with the company, it's highly advisable that they attend the classes."

64.  The DOL's Regulations state that "training is directly related to the employee's job if it is designed to make the employee handle his job more effectively as distinguished from training him for another job, or to a new or additional skill."  29 C.F.R. § 785.29.

65.  Total Look's training directly related to the employee's ability to do her job and was designed to make the employee handle his job more effectively.

66.  At a Connecticut Department of Labor Unemployment Appeal Hearing held on July

12, 2018, Total Look's CEO, Cher Anderson, stated under oath that Total Look required new hires to "go on a formal training program to learn the craft."

67.   At Staff Meetings, Ms. Anderson discussed a variety of matters.  The primary topic at Staff Meetings was about training plans and topics for upcoming training sessions.  Other topics included discussing any new promotions, revenue numbers and any plans to increase revenue.

68.   Total Look's Staff Meetings were directly related to the employees' jobs.

69.   On March 28, 2018, Ms. Anderson sent Ms. Johnson a letter confirming the termination of her employment.  The letter further stated that (1) Ms. Johnson owed Total Look $1,050 for educational costs, (2) Ms. Johnson owed Total Look $196.87 for two paid vacation days she used, (3) Ms. Johnson owed Total Look $1,246.87, (4) Total Look had withheld her final paycheck for $588.000 and applied that money toward the amount due and (5) Ms. Johnson owed $658.87 and would need to repay the amount in three monthly installments of $219.62, beginning on May 1, 2018.

70.   On information and belief, Total Look maintained a practice of withholding the final paycheck of employees who had worked at Total Look for less than three years and said the money was to reimburse Total Look for educational expenses.

71.   When the hours she spent attending training sessions, completing training assignments and attending staff meeting is added to her hours worked, Ms. Johnson worked an average of approximately 45 days per week.  However, she was not paid for any of the time spent over 40 hours per week.  During the time period after January 1, 2017, when her pay was increased to the Connecticut minimum wage of $10.10 per hour, Ms. Johnson should have been paid $15.15

per hour, or an additional $75.75 per week.

72.    The Defendants willfully and intentionally failed to pay employees' wages for
attending training sessions, completing training assignments, attending staff
meetings and withholding wages from employees' final paychecks.

73.    At all times on or after October 30, 2016, the Defendants maintained a "Salon
Policies" manual which stated next to "Rate of Pay" at page 5 that "financial
compensation is offered on an individual basis and should be kept confidential."

## V.    LEGAL CLAIMS

### COUNT ONE – COLLECTIVE ACTION CLAIM UNDER 29 U.S.C. § 216(b) FOR VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA ON BEHALF OF PLAINTIFF AND THE FLSA CLASS

74.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

75.    Based on the foregoing, Defendants' conduct in this regard was a willful violation of
the FLSA in that Defendants knew or should have known that Johnson and all
other members of the FLSA class were entitled to be paid one-and-one-half times
their regular rate of pay for all hours worked in excess of 40 per week, but failed to
do so.

76.    Accordingly, Johnson and all other members of the FLSA class are entitled to
compensation at one-and-one-half times their regular rate of pay for all hours
worked in excess of 40 per week, liquidated damages, attorneys' fees and court
costs, pursuant to 29 U.S.C. § 216(b).

### COUNT TWO – CLASS ACTION CLAIM FOR VIOLATION OF THE OVERTIME PROVISIONS OF THE CMWA ON BEHALF OF PLAINTIFF AND THE CONNECTICUT CLASS

77.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

78.    Based on the foregoing, Defendants' conduct in this regard was willful violation of

the CMWA, in that Defendants knew or should have known that Johnson and all other members of the Connecticut class were entitled to be paid one-and-one-half times their regular rate of pay for all hours worked in excess of 40 per week, but failed to do so.

79. Defendants' conduct in failing to pay Johnson and all other members of the Connecticut Class their earned compensation was unreasonable, arbitrary and/or in bad faith, in that Defendants knew or should have known that they were entitled to be paid for all hours worked in excess of 40 per week at one-and-one-half times their regular rate of pay, but failed to do so.

80. Accordingly, Johnson and all other members of the Connecticut class are entitled to compensation at one-and-one-half times their regular rate of pay for all hours worked in excess of 40 per week, penalty damages, attorneys' fees, and court costs pursuant to Connecticut General Statutes § 31-68.

**COUNT THREE – COLLECTIVE ACTION CLAIM UNDER 29 U.S.C. 216(b) FOR VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE CMWA ON BEHALF OF PLAINTIFF AND THE CLASS**

81. Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

82. Based on the foregoing, Defendants' conduct in this regard was a willful violation of the FLSA in that Defendants knew that Johnson and all other members of the FLSA class were entitled to be paid the minimum wage for all hours worked, including hours worked in participating in training sessions, completing training assignments and attending office meetings.

83. Accordingly, Johnson and all other members of the FLSA class are entitled to compensation for minimum wage rate of pay for all hours worked in participating in training sessions, completing training assignments and attending office meetings.

**COUNT FOUR – CLASS ACTION FOR VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE CMWA ON BEHALF OF THE PLAINTIFF AND THE CONNECTICUT CLASSES**

84.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

85.   Based on the foregoing, Defendants' conduct in this regard was a willful violation of the CMWA in that Defendants knew that Johnson and all other members of the Connecticut class were entitled to be paid the minimum wage for all hours worked, including hours worked in participating in training sessions, completing training assignments and attending office meetings.

86.   Accordingly, Johnson and all other members of the Connecticut class are entitled to compensation for the minimum wage rate of pay for all hours worked in participating in training sessions, completing training assignments and attending office meetings.

**COUNT FIVE – CLASS ACTION CLAIM FOR UNPAID WAGES IN VIOLATION OF THE CMWA ON BEHALF OF PLAINTIFF AND THE CONNECTICUT CLASS**

87.   Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

88.   Defendants failed to pay Johnson or the other Plaintiffs for their agreed upon hourly rate for all hours worked in violation of Conn. Gen. Stat. § 31-71(b).

89.   The Defendants required Plaintiffs to perform uncompensated work for participating in training sessions, completing training assignments and attending staff meetings, in violation of Conn. Gen. Stat. § 31-72.

90.   Accordingly, Johnson and the other plaintiffs are entitled to relief pursuant to Conn. Gen. Stat. § 31-72, including lost wages, lost interest, liquidated damages and attorney's fees and costs.

**COUNT SIX – CLASS ACTION CLAIM FOR BREACH OF CONTRACT ON BEHALF OF THE PLAINTIFF AND THE CONNECTICUT CLASS AGAINST TOTAL LOOK**

91.  Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

92.  Plaintiffs and Total Look had a contract whereby the Plaintiffs would each be paid for all hours for work performed at an agreed upon hourly rate.

93.  Total Look failed to pay the money to which the Plaintiffs were each entitled.

94.  As a result of the foregoing, Total Look breached their contracts with each of the Plaintiffs.

95.  The Plaintiffs are each entitled to their economic damages and lost interest caused by Total Look aforesaid breach of contract.

**COUNT SEVEN – CLASS ACTION CLAIM FOR UNJUST ENRICHMENT ON BEHALF OF THE PLAINTIFF AND THE CONNECTICUT CLASS AGAINST TOTAL LOOK**

96.  Plaintiffs incorporate by reference all allegations in the preceding paragraphs.

97.  Total Look was unjustly enriched as a result of the work performed by the Plaintiffs for which they were not paid.

98.  Total Look's revenue was improved because, their improved skills resulting from the training sessions they attended and training assignments they completed by the Plaintiffs, Total Look was able to charge customers more money and able to offer its customers higher quality service.

99.  As a result of the time employees spent promoting Total Look on their personal social media Facebook pages, Total Look was able to bring in more customers and, as a result, generated higher revenue.

100.  Total Look failed to pay monies owed to the Plaintiffs for the time they spent attending training sessions, completing homework assignments and placing postings on Facebook.

101.  Total Look has been unjustly enriched by this failure and justice requires that

17

Defendants pay Plaintiffs for such money owed.

102.    Therefore, Plaintiffs are entitled to these economic damages and lost interest for

unjust enrichment.

**COUNT EIGHT – CLASS ACTION ON BEHALF OF THE PLAINTIFF AND THE
CONNECTICUT CLASS WHOSE WAGES WERE WITHHELD FROM THEIR FINAL
PAYCHECKS.**

103.    Plaintiffs incorporate by reference all allegations in all preceding paragraphs.

104.    Total Look maintains a practice of withholding from employees' whose

employment ended wages which Total Look charged employees for training

costs.

105.    Total Look maintains a practice of threatening former employees with and/or suing

former employees for the amount of money charged to the employees for training

costs if the amount Total Look claims they are due exceeds the amount of money

in the employee's final paycheck.

106.    Total Look willfully and intentionally violated Conn. Gen. Stat. § 31-73(b).

107.    The Plaintiffs are entitled to the wages withheld from their final paychecks,

liquidated damages, lost interest, and attorney's fees and costs.

**COUNT NINE – CLASS ACTION ON BEHALF OF THE PLAINTIFF AND THE
CONNECTICUT CLASS WHO WERE SUBJECT TO THE DEFENDATS' PAY
SECRECY POLICY.**

108.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

109.    Total Look maintains a policy that prohibits employees from discussing their

compensation with other employees.

110.    Connecticut's Pay Equity and Fairness Statute states, in relevant part, that "no

employer shall prohibit an employee from disclosing or discussing the amount of

his or her wages or the wages of another employee of such employer that has

been disclosed voluntarily by such other employees."  The statute became effective on July 1, 2015.

111.     The Defendants' aforesaid pay secrecy policy violates the Connecticut Pay Equity and Fairness Statute.

## VI.    DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims, individually and on behalf of all other similarly situated persons:

a.      That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action or that the court issue such notice, to all persons who are presently, or have been at any time during the six years immediately preceding the filing of this suit, employed by Total Salon as a non-exempt employee.  Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b.      Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of members of the Connecticut class and the appointment of Plaintiff and his counsel to represent the class;

c.      Unpaid minimum wages under the FLSA;

d.      Unpaid minimum wages under the CMWA;

e.      Unpaid overtime wages under the FLSA;

f.      Unpaid overtime wages under the CMWA;

g.      Liquidated damages under the FLSA;

h.      Liquidated damages under CMWA;

i.      Pre-Judgment and Post-Judgment interest, as provided by law;

j.      Unpaid "gap time" wages;

k.      Attorneys' fees and costs of suit under the FLSA and CMWA, including

expert fees;

l.      Wages withheld from final paychecks;

m.      Any wages recovered for training expenses;

n.      Economic damages for breach of contract and unjust enrichment;

o.      Order the Defendants to remove its aforesaid pay secrecy policy from its

"Salon Policies," and

p.      Such other and further relief as the Court deems just and equitable.

## VII.   JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

PLAINTIFF, NICOLE JOHNSON

Individually and on behalf of all others
similarly situated,

By: ___/s/_____

Gary Phelan (CT 03670)
gphelan@mitchellandsheahan.com
Reese Mitchell (CT 30226)
reesemitchell@mitchellandsheahan.com
MITCHELL & SHEAHAN, P.C.
80 Ferry Blvd., Suite 216
Stratford, CT 06615
Tel. (203) 873-0240

## **CERTIFICATION**

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on January 31, 2019 to all counsel and self-represented parties of the record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served:

Meredith G. Diette
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460
(203) 783-1200
mdiette@berchemmoses.com

_____/s/ Gary Phelan_____
Gary Phelan
